No. 34,511

THE NATIONAL BANK OF TOPEKA, as Executor of the Estate of
Annie Mary Bundy, Deceased, *Plaintiff*, v. KARL KLOOZ, as
Bursar of The University of Kansas, et al., *Defendants*.

(95 P. 2d 258)

Opinion filed November 10, 1939.

*Erle S. Francis, Erle W. Francis* and *John G. Egan,* all of Topeka, for the plaintiff.

*Jay S. Parker,* attorney general, and *A. B. Mitchell,* assistant attorney general, for the defendants other than the Equitable Life Assurance Society.

The opinion of the court was delivered by

ALLEN, J.: This is an original proceeding in mandamus.

Annie M. P. Bundy, a single woman, sometimes known as Annie Mary Bundy, was the annuitant in two certain annuity policies issued by the Equitable Life Assurance Society of the United States, hereafter referred to as the society. These policies were alike as to their terms, and although issued on different dates, were effective as of the same date, and generally only one policy need be noticed. The annuitant died and shortly thereafter the society issued its check for $6,106.35 payable to the order of the executor of her estate and to Kansas University, Lawrence, Kan., for the benefit of the Fine Arts Department. This check came into the possession of Karl Klooz, the bursar of the university. The executor, contending it was entitled to the check and the proceeds thereof, as assets of the decedent's estate, made demand on the bursar that he endorse and deliver the check to it. The university contending it was entitled to the proceeds, the bursar refused. Thereupon the executor brought this action making parties defendant the bursar of the university, the members of the board of regents of the university, and the society,

and to compel the bursar to endorse the check and to deliver it to the executor.

The society answered, admitting issuance of the policies and the death of the annuitant; that it had determined its liability and issued its check as above mentioned; that the check had not been presented for payment, and that it had been at all times and was now, ready and willing to honor it when produced in usual course; that as to matters of difference between the executor and the other defendants it had no knowledge and was not concerned; that the face of the check is its total liability in the premises; that it was ready and willing to turn over the proceeds of the check upon proper · endorsement, and that it should be relieved of any and all further liability under the annuity policies, and it prayed for relief accordingly.

The executor and the defendants other than the society have filed an agreed statement of facts covering all matters in issue and some collateral matters, the competency of which, as evidence, is presented in the briefs.

As has been indicated, the question is who is entitled to the proceeds of the policy now represented by the check which the executor seeks to have endorsed and delivered to it. That requires an examination of the policy. The policy was dated July 17, 1931, and by it the society agreed to pay to Annie M. P. Bundy a life annuity, subject to conditions stated, in monthly payments of $22.35 (this referring to one policy only) beginning on the anniversary of the register date of the contract (elsewhere shown to be July 13, 1931), upon which the annuitant's age at nearest birthday was sixty-five years, but at any time prior to the commencement of the payments, the annuitant might elect to receive either a life annuity, according to certain schedules, or a refund annuity according to certain other schedules, and that—

"If the annuitant dies prior to the due date of the first annuity payment hereunder, the society will, upon receipt of due proof of the annuitant's death, provided premiums have been duly paid and this contract is then in force and is then surrendered properly released, pay *to the annuitant's executors or administrators* beneficiary (with the right to the annuitant to change the beneficiary or assign this contract) a death benefit as set forth in the provision entitled 'Death Benefit' on the fourth page hereof."

(All of the above is printed in the policy except the italicized portion, which is typewritten.) At the appropriate place in the policy are endorsements showing that on May 21, 1934, the "bene-

ficiary for death benefit" was changed to "Fine Arts Department of Kansas University, Lawrence, Kansas," and that on October 10, 1934, it was changed to—

"Kansas University, Lawrence, Kansas, for the benefit of the Fine Arts Department. It is understood and agreed that the Equitable Life Assurance Society of the United States shall not be responsible for any failure of the said university to perform its duties as·stated nor for the application or disposition of any moneys paid to said university and such payment shall fully discharge the said society for the amount so paid."

Under the heading "annuity payments" it was provided:

"The date of the first annuity payment will be the anniversary of the register date of this contract nearest to the birthday upon which the annuitant attains the age elected for commencement of annuity payments. Annuity payments will be made monthly thereafter during the lifetime of the annuitant and shall terminate with the last payment preceding annuitant's death; provided, however, that where the annuitant has elected a refund annuity," etc.,

making further provisions not now material, and showing schedules of amounts of monthly payments at certain ages under both life annuity and refund annuity. Then follow provisions with reference to determining the amount of the death benefit, showing, by attached schedules, that during the sixth contract year the death benefit for each premium unit was $593, and during the seventh year was $705. (The contracts before us covered ten premium units.) We need not notice the options on surrender or lapse, for neither occurred, nor the other provisions, for they are not helpful here.

The record discloses that Annie M. P. Bundy was born September 27, 1872, that she would have been sixty-five years of age on September 27, 1937, and that the anniversary of the register date of her policy, July 13, 1931, closest to her sixty-fifth birthday was July 13, 1937. Although the record discloses that she had a number of conversations with an agent of the society looking toward a change in certain provisions of the policy that would defer payment of benefits to her, no change was in fact effected, and we shall ignore that portion of the agreed facts.

Shortly after Miss Bundy made the second change of beneficiary and on October 19, 1934, she wrote a letter to Kansas University "Attention Dean of Fine Arts Department," stating that any proceeds payable at her death from the two policies should be devoted to the creation or development of a fund to provide tuition for worthy and deserving students in piano, to be chosen as provided in the letter. This letter was witnessed by two persons. The record

does not disclose that any attempt was made to have this document admitted as a will, a codicil to a will or as a part of her will.

On June 24, 1937, and prior to the anniversary of her policy and its register date, Annie M. P. Bundy left her home in Topeka on a trip to England. She died at Southampton, England, on July 24, 1937. During the life of the policy the annuitant paid the several annual premiums due from her and the policy was in full force at the date of her death. So far as the record shows, she had never suffered any lapse nor had she attempted in any way to surrender the policy. She had never made any election to take refund annuities in lieu of life annuities, as she might have done under the policy. After the death of Miss Bundy, her will, which named the plaintiff as executor, was duly admitted to probate and plaintiff was appointed to execute the same. Under the terms of her will, no bequest was made of any benefits under the policies involved, and if the proceeds are paid to her estate, they will ultimately pass to the residuary legatees, the University of Kansas or its Fine Arts Department not being included therein.

The society was duly advised of the death, and under date of September 30, 1937, it drew its check payable to the order of National Bank of Topeka, Topeka, Kan., as executor of the estate of Annie M. P. Bundy, deceased, and Kansas University, Lawrence, Kan., for the benefit of the Fine Arts Department in the sum of $6,106.35, and stating that when receipted by the payees in the space provided on the back, "this voucher becomes an endorsed check." The endorsement to be signed was an acknowledgment of receipt of all claims due under the two policies, giving their numbers, as detailed in the statement of account delivered with the check, the statement to be retained. The statement attached to the check is entitled, "Statement of account for death claim on the life of Annie M. P. Bundy."

The account refers to each policy by number, shows "death benefit" and amount in each case (which amounts are based on the policies having determined after July 13, 1937), gives credit for certain dividends and interest and charges premiums due July 13, 1937, and arrives at the balance represented by the face of the check. There is no dispute whether the check is for the correct amount under any theory and we shall not discuss the various items of debit and credit in the statement.

Insofar as the society is concerned, it may have believed that the

course of its dealings with Miss Bundy created, if not a legal, at least a moral obligation which it should recognize. It is sufficient here to say that it recognized a liability either to the executor or to the university in the amount represented by its check to them jointly. The question is as to which should the proceeds go. But in any discussion of the arguments advanced by either party, we must take note of matters which might possibly have been available as defenses to the society had it denied liability, but without reflecting in any way on the course it pursued.

The executor's brief is devoted principally to its contention the university is not entitled to the proceeds of the check. It contends the university may recover only as it may be entitled to death benefits under the policy; that the provision for the payment of death benefits is conditioned "If the annuitant dies prior to the due date of the first annuity payment hereunder," etc., the death benefits will be paid the designated beneficiary; that by other terms of the policy the due date of the first annuity payment was July 13, 1937, and that as the annuitant did not die until after that date, there were no death benefits due and the university takes nothing. Following out that strictly literal method of interpreting the contract, the following conclusion would be reached. The contract provided that when the last monthly payment of life annuity prior to the death of the annuitant had been paid, the society's obligation was ended. The first monthly payment of life annuity was due July 13, 1937. The annuitant had never elected to receive any optional benefit, and was then entitled to receive the first installment of the life annuity, but died during the first month and without receiving that first installment. Under such reasoning, the executor would be entitled to recover the first monthly installment, totaling on both contracts the sum of $44.70, and upon that payment being made, the company's obligation was fully satisfied and terminated. Under such a theory, the executor had no greater interest and would not be concerned if the society saw fit to pay additional benefits to any other person. There is nothing in the pleadings or in the briefs, however, which leads to a conclusion that any recovery to the executor is to be so limited. Nor should the matter be disposed of in such fashion. The university, placing some weight on the negotiations looking toward some change in the contracts, but which were never consummated, and a statement of which we have purposely omitted, takes the position that as a result the society was placed in a position where it

could not begin annuity payments, the thirty days' grace in which the annuitant could have paid an additional premium had not expired, and there being uncertainty, the university and not the executor is entitled to the proceeds of the check.

The disposition to be made of the proceeds represented by the society's check presents some difficulty. No case is cited in the briefs which we find helpful.

The record clearly discloses that the society recognizes liability, and we think it a fair conclusion that it was in doubt as to who was entitled to the benefits, or it would not have made its check to both payees. But in making that check it adopted a course of action which is pertinent and persuasive. Dependent on the annuitant's surviving to the anniversary of the register date of the policy nearest to her sixty-fifth birthday, her right was fixed to receive monthly payments of life annuity so long as she lived or on her timely election to receive monthly payments of refund annuity, which would be smaller in amount than the life annuity, but which would continue after her death. If she died before the due date of the first annuity payment, stipulated death benefits were to be paid. Dependent on these various factors, the society's liability might be great or small. The provision for the conditional payments of death benefits was not alone a provision for the benefit of the annuitant; it was likewise a limitation on the liability of the society and one which so far as the society was concerned it might waive. In drawing its check, the society attached the statement of account to which reference has been made. From the recitals therein it is apparent the society treated the admitted liability as one for death benefits.

We pause to consider whether there could have been liability for the amount of the check on any other theory. No one claims the annuitant had made an election in writing that amounts paid by her were to be returned as refund annuities to her if living, to her executor if she were dead, or to anyone else. Viewed from the angle of life annuities, and considering the difference in the amount thereof due at the time of the death of the annuitant and the amount of the check, it is clear that the payment was not on account of any life annuity. Apparently recognizing that the form and content of the statement would tend to solve the difficulty, the executor argues that the method followed by the society in computing the amount of the check is not an obstacle to the collection of that check by the executor, saying further the society could have apprehended controversy

between the executor and the university and made the check as it did so that no liability would attach to it, and the rights between the two claimants could be settled by judgment of a court, and that—

"It had its established good reputation as a guide. Its decision cannot be in question in this case. The society has a well-established reputation for fair dealing with its policyholders. The reasons for its course in making the check as it did should be accepted as wise and honorable."

With that statement we agree, but not with the conclusion of the executor that the method of computation is not an obstacle to collection of the check by the executor.

We have taken the space to state in detail the matters presented. Assuming the society had not admitted liability to either the executor or to the university and that it might be doubted that under the literal terms of the contract either could have proved its right to a recovery, the question may be said to simmer down to which is justly entitled, the executor or the university. In our opinion the liability admitted is for death benefits. To such benefits the executor has no right. The university has at least a color of right thereto and is entitled to the proceeds of the check after it has been presented for payment and honored, as the society admits it will be. The check should be properly endorsed by the executor and the university and upon presentment and payment, the proceeds should be paid to the university for the uses indicated in the policy.

Plaintiff's request for a writ of mandamus is denied.